**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

ACQIS LLC,

                Plaintiff,

      v.

DELL INC.; HEWLETT-PACKARD CO.;
INTERNATIONAL BUSINESS MACHINES
CORP.; NEC CORP. OF AMERICA; ORACLE
AMERICA, INC.; and SUPER MICRO
COMPUTER, INC.,

                Defendants.

Case No. 6:09-00148-LED
**Jury Trial Demanded**

**PLAINTIFF ACQIS LLC'S OPPOSITION TO MOTION FOR LEAVE
TO AMEND DEFENDANTS' INVALIDITY CONTENTIONS**

## I.     INTRODUCTION

Nothing has changed to justify allowing the Defendants to amend their invalidity contentions a fourth time.  They could have included their "newly-discovered" theory about the IBM BladeCenter in their original invalidity contentions served in January.  Similarly, they could have included the IBM BladeCenter in their earlier amended invalidity contentions.  Instead, Defendants sat on a known piece of potential prior art for ten months and dumped it on ACQIS near the close of discovery.  To be clear, Defendants not only seek their fourth amendment to their Invalidity Contentions, they also seek to swap this new invalidity theory into their Court-ordered narrowed invalidity contentions.[1]  Defendants must show good cause for ***both*** forms of relief they seek.

Defendants' newest invalidity theory is based on the IBM BladeCenter, which is a system that the Defendant IBM developed and that the Defendants as a group have known about since at least October 2009—almost a full year ago.  Defendants even recognized the importance of the IBM BladeCenter in October 2009—when IBM listed a witness in its initial disclosures that was knowledgeable about the "design, development, and operation of IBM BladeCenter."  But according to their own statements, Defendants only began investigating the IBM BladeCenter as potential prior art in August 2010—after ACQIS narrowed the number of asserted claims and Defendants narrowed their Invalidity Contentions.  Defendants offer no excuse for their extreme tardiness.  Among all Defendants, they could not produce a single affidavit explaining why they

---

[1] Defendants are making a habit of seeking late amendments.  Just last month, they filed a motion for their third requested amendment to their Invalidity Contentions.  (D.I. 317.) In that proposed amendment, Defendants—including Defendant Hewlett Packard—sought to introduce an HP system called RLX 300ex into this case.  And, just like in this case, Defendants knew about the "newly-discovered" reference for most of this litigation and failed to include it in their original invalidity contentions.

waited almost a year to investigate a known system as potential prior art.  Their attorneys' argument does not cure their lack of actual evidence.

Defendants do present the Court with a list of excuses as to why they did not realize this long-known IBM system was potential prior art until late in the case.  First, Defendants argue that the IBM BladeCenter was not potential prior art before the Court's claim construction order—even though they first announced their intention to amend their Invalidity Contentions to add it two weeks *before* the *Markman* hearing and six weeks *before* the claim construction order issued.  Second, Defendants argue that the IBM BladeCenter was not potential prior art until ACQIS made particular statements during reexamination.  Defendants submit no affidavits or evidence backing either argument.  Instead, they present only attorney argument.  Considering Defendants' burden, this lack of actual evidence alone justifies denying Defendants' motion. And more importantly, Defendants' arguments do not withstand scrutiny.  Nothing has changed to justify their late addition of this brand-new invalidity theory.

## II.      BACKGROUND

Defendants have two delays they must justify under the good cause standard.  The first delay involves the eight-month wait to disclose the IBM BladeCenter invalidity theory.  The second delay involves Defendants' waiting an additional two months—through the critical closing phases of discovery—before seeking leave to add their new invalidity theory to the case. Defendants fail to show good cause for either delay.

### A.      Defendants' First Unjustified Delay: Eight-Month Delay In Raising The Known IBM BladeCenter

Defendants knew as early as October 29, 2009 about the IBM BladeCenter.  On that date, Defendant IBM listed its employee, Bill Holland, in its initial disclosures as a person with

knowledge about the "**design, development, and operation of IBM BladeCenter**."   (emphasis added) (*See* Ex. 1, IBM's Initial Disclosures.)   And for the next eight months, Defendants apparently did nothing with this information about the IBM BladeCenter.

To put Defendants' initial delay in context of the litigation, the bullet points show how long Defendants waited relative to other litigation events to even disclose their invalidity theory based on the IBM BladeCenter—this delay does not include the Defendants' additional two-month delay in filing a motion to amend:

- **447** days after this action was filed;  (D.I. 1.)

- **244** days, at least, after Defendants knew of the IBM BladeCenter design and development;  (Ex. 1.)

- **282** days after ACQIS served its Infringement Contentions;  (*See* Ex. B to Mot.)

- **219** days after the Patent Rules originally required Defendants to serve Invalidity Contentions;  (D.I. 106; P.R. 3-4.)

- **212** days after ACQIS provided the February 2000 date of conception for claims including the Ethernet hub controller element;  (*See* Ex. G to Mot..)

- **166** days after Defendants' Invalidity Contentions were due using the eight-week extension granted by ACQIS;  (D.I. 158.)

- **152** days after Defendants' Invalidity Contentions were due using an additional two-week extension—for a total ten-week extension—agreed to by ACQIS;  (D.I. 203.)

- **135** days after Defendants' production of all relevant documents was due;  (D.I. 154, 158.)

- **114** days after Defendants' first amendment to their Invalidity Contentions;  (D.I. 230.)

- **110** days after the claim construction process began, under P.R. 4-1;  (D.I. 213.)

- **37** days after ACQIS again provided the February 2000 conception information for the claims containing the Ethernet hub controller element;  (*See* Ex. I to Mot. at 6.)

- **22** days after ACQIS's opening claim construction brief was filed; and  (D.I. 261.)

4.

- **19** days after Defendants disclosed another alleged prior art system to ACQIS and requested that ACQIS consent to a second amendment of Defendants' Invalidity Contentions.  (*See* Ex. 2, June 4, 2010 Letter from C. Martiniak to C. Juarez.)

## B.    Defendants' Second Unjustified Delay:  Two Month Delay in Seeking Leave to Amend

Defendants waited 78 additional days to seek leave to amend their Invalidity Contentions after they first brought the IBM BladeCenter to ACQIS's attention as potential prior art.  On top of their eight-month delay, Defendants' additional 78-day delay may seem irrelevant.  But these 78 days covered a critical period of the litigation and pushed this issue to days prior to the end of discovery.  Even now, we are briefing this issue past the close of discovery and days before expert reports are due.

Again, to put the additional delay in context, the bullets below show how the delay relates to the other events in the litigation.   Defendants' Motion for Leave was filed on September 9, 2010, which is:

- **78** days after Defendants first disclosed to ACQIS the IBM BladeCenter as alleged prior art;  (*See* Ex. J to Mot.)

- **63** days after the July 8, 2010 *Markman* hearing;  (D.I. 298.)

- **41** days after ACQIS narrowed its asserted claims to 25; (D.I. 314)

- **38** days after the Court issued its August 2, 2010 claim construction order (D.I. 315);

- **27** days after Mr. Holland's deposition regarding early development of BladeCenter; (*See* Ex. C to Mot.)

- **20** days after Defendants first provided charts and documents for the IBM BladeCenter; (*See* Mot. at 7; Ex. A  to Mot.)

- **6** days prior to the close of discovery.  (D.I. 289.)

## III.   ARGUMENT

Under P.R. 3-6(b), Defendants must show "good cause" for their requested amendment. Courts consider several factors when determining whether there is good cause, including: "(1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) the danger of unfair prejudice to the non-movant; and (4) the availability of a continuance to cure such prejudice." *S&W Enters., LLC v. Southtrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003); *ST Microelectronics, Inc. v. Motorola, Inc*., 307 F. Supp. 2d 845, 850 (E.D. Tex. 2004).  Defendants have not satisfied their burden on these factors.

In making its decision, the Court should also consider the purpose and integrity of the Patent Local Rules.  A Court is always justified in enforcing its rules.  As this Court stated, the Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Anascape, Ltd. v. Microsoft Corp*., 2008 WL 7180756 (E.D. Tex. May 1, 2008) (Ex. 3).

Defendants, in this case, have failed to establish that they possess "good cause" for their requested amendment.   Allowing Defendants to substitute their theories at this stage of the litigation undermines the purpose of the Patent Rules, makes Defendants' narrowed invalidity theories meaningless, threatens to disrupt case timing, and prejudices ACQIS.

### A.   Defendants Have No Explanation for Their Lack of Diligence

According to the Defendants, changes in factual circumstances necessitate their very late introduction of a new invalidity theory.  According to Defendants, the IBM BladeCenter only

6.

became potential prior art after these changed factual circumstances arose.  There are several problems with Defendants' arguments.

### 1. Defendants Knew About IBM BladeCenter But Apparently Did Nothing to Investigate

As previously mentioned, Defendants knew about the IBM BladeCenter as early as October 2009 and IBM even expressly disclosed persons knowledgeable about its design and development in its Initial Disclosures.  (*See* Ex. 1.)  But, according to Defendants, they waited until August 2010 to investigate the conception of the IBM BladeCenter.  (*See* Mot. at 12.)

To show good cause for this extreme delay, Defendants must provide facts to explain why they could not have included the IBM BladeCenter in their original invalidity contentions or their amended invalidity contentions.  Defendants do not submit a single piece of evidence—not even a single affidavit—explaining why they did nothing over the past 10 months with regard to the IBM BladeCenter.

The only facts in the record weigh strongly against the Defendants' request:

1. Defendants knew about the IBM BladeCenter's potential relevance as a prior art system at least since October 2009.  (*See* Ex. 1.)

2. Defendants knew of a particular witness with knowledge about the IBM BladeCenter—Mr. Holland.  (*Id.*)

3. Defendants had access to Mr. Holland.  He is an IBM employee and has been since 1984.  (*See* Ex. 4, Holland Depo. at 11:25-12:7.)  In fact, IBM designated him as a 30(b)(6) witness in this case.  (*See* Ex. 5, June 22, 2010 email from M. Powell to A. Byers.)

4. Defendants had ongoing access to IBM BladeCenter documents.  Mr. Holland testified that the documents relevant to the early development of the IBM BladeCenter have been in his possession for years and that they were available when the litigation began.  (*See* Ex. E to Mot., Holland Depo. at 84:19-86:5; 94:6-25.)

5. Defendants had an obligation to collect and produce Mr. Holland's documents in early 2010 according to the Case Management Order.  (D.I. 154)

      6.  Defendants failed to collect and produce some of Mr. Holland's documents, such as lab notebooks, or investigate the existence of conception documents from other individuals regarding the IBM BladeCenter until after Mr. Holland identified categories of documents during his deposition:  seven months after they were due.  (*See* Ex. 6, Aug. 20 and 30, 2010 emails between J. Brogan and M. Powell.)

Defendants carry the burden to justify their delay, which includes showing diligence over the past ten months.  With no evidence of their own, and in light of the facts set forth above, they cannot carry their burden.  *See ST Microelectronics, Inc.*, 307 F. Supp. 2d 845, 851 (finding that there was no showing of diligence when the moving party failed to establish the details regarding its alleged diligence).

## 2.      The Claim Construction Ruling Changed Nothing

Defendants argue that the Court's claim construction ruling—in which the Court rejected Defendants' argument that a "computer module" had to be "comparable in size to a video cassette"—changed which prior art they investigated.  According to Defendants, they never considered a system that was larger than a video cassette as prior art until the Court's claim construction order.  (*See* Mot. at 6-7.)  This excuse contains logical fallacies:  the weeks-prior timing of Defendants' announcement that they intended to amend their Invalidity Contentions to add the IBM BladeCenter and the contents of their original invalidity charts.

First, Defendants notified ACQIS on June 23, 2010 that they intended to amend their Invalidity Contentions to add the IBM BladeCenter.  (*See* Ex. J to Mot.)  Two weeks later, the Court held the *Markman* hearing, and six weeks later, the Court issued its claim construction rulings.  (D.I. 158 and 315)  Before the Court's *Markman* hearing and claim construction order, Defendants intended to add the IBM BladeCenter.  And after the Court's claim construction

order, Defendants intended to add the IBM BladeCenter.  Nothing changed because of the Court's claim construction order.

Second, Defendants' original Invalidity Contentions identify at least two systems that are larger than the size of a standard VHS video cassette.  (*See* Exs. 7 and 8, Photographs of Ketris 9000 and WhiteCross 9800 systems.)  Photographs of the Ketris 9000 and WhiteCross 9800 systems, which were included in Defendants' original Invalidity Contentions on January 22, 2010 as prior art systems, show that the computer modules in these systems are larger than the size of a standard VHS video cassette.  (*See id.*; see also Ex. 9, Defendants' Invalidity Contentions and Ex. E thereto.)  And these systems are also part of Defendants' narrowed Invalidity Contentions.  (*See* Ex. N to Mot.)  Accordingly, before the Court's claim construction order, Defendants considered modules larger than a video cassette as possible prior art.  And after the Court's claim construction order, Defendants considered modules larger than a video cassette as possible prior art.  Again, nothing changed because of the Court's claim construction rulings.

### 3.    ACQIS's Reexamination Arguments Changed Nothing

As an additional justification for their last-minute invalidity theory change, Defendants advocate a novel, but flawed, theory—that ACQIS's reexamination responses filed on July 23, August 24, and September 2, 2010 necessitate the introduction of this new invalidity theory. (*See* Mot. at 9-10; *see also* Ex. K to Mot.)  Again, this excuse makes no sense:  Defendants raised the addition of the IBM BladeCenter on June 23, 2010, ***a month before*** ACQIS filed its first reexamination response.   (*See* Ex. J.)   Moreover, neither case law nor facts support Defendants' theory.

9.

Defendants characterize ACQIS's reexamination statements as "narrowing" the construction of the term "serial communication hub controller."  (*See* Mot. at 9-10.)  Even assuming that Defendants are correct in their characterization, which they are not, Defendants fail to establish any link between the ACQIS reexamination statements and the need to introduce a brand new invalidity theory.  Defendants carry the burden to establish this link as part of the good-cause requirement.  For example, Defendants do not explain why the IBM BladeCenter was not potential prior art before ACQIS made the allegedly narrowing statements during reexamination.  Defendants also do not explain why the IBM BladeCenter suddenly became potential prior art only after ACQIS made the allegedly narrowing statements during reexamination.  And Defendants fail to explain why they could not have put the IBM BladeCenter—which was known to them—into their original invalidity contentions.  Defendants provide no technical analysis, no expert affidavits, and no invalidity analysis to justify their excuse about the ACQIS reexaminations.  These proof failures are fatal to Defendants' motion.

The second problem with Defendants' theory is that ACQIS's reexamination submissions are not narrowing.  Instead, they are consistent with the positions ACQIS has taken in this case since the beginning.  ACQIS's reexamination statements define a "hub controller" in view of the patent claims and specifications, which is entirely consistent with ACQIS's position throughout claim construction that the claim terms should be accorded their plain and ordinary meaning in view of the patent claims and specifications.  (*See* Ex. K to Mot.)  Again, the reexamination changed nothing to justify Defendants' adding a brand new invalidity theory at the close of discovery.  If the IBM BladeCenter is potential prior art now, then it was potential prior art in

January when the Defendants submitted their original Invalidity Contentions and it was potential prior art in June when Defendants first raised adding it to their Invalidity Contentions.

### 4. Defendants' Story About Conception Dates Fails to Justify Their Delay.

Defendants claim that they only recently discovered Dr. Chu's February 15, 2000 conception date for the claims containing Ethernet hub elements when ACQIS served its supplemental response to Defendants' Interrogatory No. 10.  Again, this excuse makes no sense. Defendants have known about this conception date since November 23, 2009, when ACQIS responded to Defendants' Interrogatory No. 1.  (*See* Ex. G to Mot.)

Defendants cite *Alt v. Medtronic, Inc*., 2006 WL 278868 (E.D. Tex. Feb. 1, 2006) (Ex. 10), in which the Court granted leave to amend when the plaintiff waited to disclose a claimed invention date that was four years earlier than the filing date until after the defendant had served its invalidity contentions.  Here, ACQIS' original response to Interrogatory No. 1 expressly disclosed a February 2000 conception date for elements containing an "Ethernet hub controller" and was served on November 23, 2009—***two months before*** Defendants' original Invalidity Contentions were due and ***nine months before*** Defendants sought leave to amend their Invalidity Contentions to add the IBM BladeCenter.  (*See* Ex. G to Mot. at 10.)  Defendants' attempts to point to interrogatory responses to justify their late strategy shift is a transparent attempt to excuse their gross negligence in failing to investigate a system available to them for months.

### 5. Defendants' Second Delay Is Also Unjustified.

As if an eight-month delay were not enough, Defendants waited another two months to file their motion to amend once they raised the IBM BladeCenter with ACQIS.  During a critical phase of the case, Defendants failed to work diligently to amend their Invalidity Contentions and

disclose the alleged documentary and testimonial evidence that corroborates the conception and reduction-to-practice dates of the IBM BladeCenter.

Defendants contacted ACQIS to discuss a possible amendment to add the IBM BladeCenter on June 23, 2010.  (*See* Ex. J to Mot.)  ACQIS immediately requested claim charts to evaluate Defendants' request.  (*See* Ex. 11, June 24, 2010 Letter from A. Byers to M. Powell.) Defendants did not provide charts detailing the invalidity theories for the IBM BladeCenter for another two months.  Defendants then sat on their hands for another three weeks—days before the close of discovery—before filing their Motion.  (D.I. 317.)  Defendants' additional two-month delay was entirely within Defendants' control, yet they once again were not diligent.

The Court in *Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896 (E.D. Tex. 2006), denied a motion for leave to amend Invalidity Contentions in a situation similar to this, where a defendant sought to add new prior art references after the claim construction hearing. The Court noted that the defendant may not have been deliberately hiding information, but "the delay in this case was fully within the control" of the defendant and "it could have done a more complete job of analysis and research earlier in the case in order to comply with its disclosure obligations." *Id*. at 902.

**B.     Inclusion of the BladeCenter is Not Critical to Defendants' Invalidity Contentions.**

Defendants argue that inclusion of the IBM BladeCenter is critical to their Invalidity Contentions.  But they give the Court no information as to why their existing invalidity theories are insufficient.  Defendants recently selected six invalidity theories per claim and would have all of these theories at trial if the Court denies their motion.  (*See* Ex. N to Mot.)  Defendants seek to swap this new theory for one of the existing six theories—meaning that Defendants must

be satisfied with at least some of their other invalidity theories and will undoubtedly present those theories in its invalidity expert report.

Defendants have a myriad of invalidity theories that they can rely upon without the IBM BladeCenter.  (*Id.*)  Accordingly, denying the Motion to Amend would cause little to no prejudice to Defendants.  *See Ariba, Inc. v. Emptoris, Inc.*, 2008 WL 7285523 (E.D. Tex. Sept. 9, 2008) (Ex. 12) (noting that movant had already identified a number of other prior art references that allegedly anticipate or render the claims of the patent obvious).

### C.    ACQIS Would be Severely Prejudiced if the Court Allows Defendants to Amend their Invalidity Contentions.

Under the Patent Rules, ACQIS was entitled to full and fair notice of Defendants' invalidity arguments the date they were due, on January 22, 2010, which reflects a ten-week extension granted by ACQIS to allow Defendants to complete their initial diligence.  Allowing Defendants yet another amendment to add the IBM BladeCenter at this late date would severely prejudice ACQIS's preparation of its case and rebuttal to Defendants' invalidity arguments.  At this point in the case:

- ACQIS has narrowed its asserted claims to 25 (D.I. 314);

- The *Markman* hearing is over and the claim construction order issued (D.I. 298; 315);

- Discovery closed on September 15, 2010 (D.I. 289);

- Opening expert reports are due in mere days, on September 24, 2010 (*Id.*);

- Rebuttal expert reports are due in five weeks, on October 29, 2010 (*Id.*); and

- Defendants provided their narrowed Invalidity Contentions on August 20, 2010, so any addition of the IBM BladeCenter may require modification of ACQIS's claim selections and disrupt the discovery and expert report schedule, thereby subverting the purpose of the parties' agreement to streamline the rest of the case.

This case has advanced too far for Defendants to credibly claim that their requested amendment does not prejudice ACQIS. *See Mass Engineered Design, Inc. v. Ergotron, Inc*., 250 F.R.D. 285 (E.D. Tex. 2008) (allowing amendment of invalidity contentions post-claim construction would be highly prejudicial); see also *West v. Jewelry Innovations, Inc*., 2008 WL 4532558 (N.D. Cal. Oct. 8, 2008) (Ex. 13) (noting that the court is "particularly reluctant" to grant a motion for leave to amend invalidity contentions post-claim construction).

Defendants cite several cases in support of their propositions that their lack of diligence does not doom this motion or that amendment of invalidity contentions does not prejudice ACQIS. (*See* Mot. at 9, 14-15.)  However, all of those cases underscore that Defendants' delay and resulting prejudice to ACQIS are key factors in the analysis of whether there is good cause to amend.  Under the case law, it is clear that it is simply too late to allow Defendants to add this reference and Defendants have no one but themselves to blame.

First, Defendants cite dicta in *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc*., 467 F.3d 1355 (Fed. Cir. 2006).  Defendants ignore the Federal Circuit's approval of Patent Rules and court rulings that require amendments to contentions to be filed with diligence.  (*Id*., stating "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation.").

Second, Defendants cite *Arbitron, Inc. v. Int'l Demographics, Inc*., 2008 WL 4755761 (E.D. Tex. Oct. 29, 2008) (Ex. 14).  This case is inapplicable because the amendment was not an addition of a prior art reference but, instead, addition of an indefiniteness defense.  Further, the

14.

requested amendment in *Arbitron* would occur prior to claim construction, discovery had not yet begun, and no depositions had been taken, all of which are completed in this litigation.

Third, in *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620 (E.D. Tex. 2007), the Court granted the requested leave to amend prior to claim construction, no depositions had yet been taken, and there were four months until the discovery close, all of which are completed in this litigation.

And finally, Defendants cite *Sybase, Inc. v. Vertica Systems, Inc.*, 2009 WL 4574690 (E.D. Tex. Nov. 30, 2009) (Ex. 15), for the proposition that a motion for leave to add additional prior art references post-*Markman* does not have great prejudicial effect. But in that opinion, the Court specifically noted that any prejudice would turn on the proximity of the discovery deadline, which has now come and gone in this litigation.

### D.      A Continuance of Discovery Will Not Cure the Prejudice to ACQIS.

There is no time left in the schedule for the extensive discovery that the addition of a new, allegedly anticipating, prior art system would create. Accordingly, this fact weighs strongly against allowing Defendants to amend their Invalidity Contentions.

Defendants attempt to direct the Court's attention away from the late stage of litigation by stating that ACQIS "is already intimately acquainted with the features of IBM BladeCenter and has investigated and conducted discovery related to these features from the outset of the case." (*See* Mot. at 13.) Defendants' unsupported statement is undermined by the actual facts. For example, according to Defendants, they did not undertake an investigation of the early IBM BladeCenter development until August 2010. (*See* Mot. at 12.) Defendants have only recently investigated the existence of early BladeCenter documents, including notebooks from long-time

IBM-employee Mr. Holland.  (*See* Ex. 6.)  Undoubtedly, many other witnesses would have knowledge regarding the specific conception of the system that Defendants seek to add to this case.  But Defendants have not disclosed those names and ACQIS has not had the opportunity to investigate fully.  (*See* Ex. 1.)  And at this late stage of the litigation, ACQIS could not even take depositions since the discovery deadline is closed and expert reports are due this week.

A continuance of the discovery deadline is not a viable option.  Discovery closed on September 15, 2010.  (D.I. 289.)  Opening expert reports are due this Friday, September 24, 2010.  (*Id.*)  Rebuttal expert reports are due only five weeks later, on October 29, 2010.  (*Id.*)  The parties have already agreed once to adjust the timeline for these activities.  (*Id.*)  There is simply no time left in the schedule to allow ACQIS to gather and review the information it needs to prepare its opening and rebuttal arguments.  Any additional discovery could change ACQIS's claim selection and could require alteration of at least its opening expert reports on infringement and damages—which are due in a matter of days.  As the Court in *Finisar* noted, "[e]nough time and money will eventually cure any prejudice caused by late disclosure of information, but that will not result in the 'just, ***speedy and inexpensive*** determination of every action.'"  424 F. Supp. 2d at 902 (emphasis in original).

## IV.   CONCLUSION

Nothing has changed to justify adding a new invalidity theory at this stage of the case. Defendants should not be permitted to sit on a known invalidity theory for ten months, make excuses as to why they could not have added it to their Invalidity Contentions months ago, and then drop it on ACQIS at the close of discovery.  Allowing amendment at this point would undermine the local rules and severely prejudice ACQIS's efforts to prepare its case.  And

considering that the Defendants can rely on many other invalidity theories, adding a new theory at ACQIS's expense is not necessary.  Thus, ACQIS requests that the Court deny Defendants leave to amend their Invalidity Contentions to add the BladeCenter.

Dated:  September 22, 2010                    Respectfully submitted,


                                               _/s/  Wayne O. Stacy_____

                                              George E. Chandler
                                              CHANDLER LAW OFFICES
                                              207 E. Frank St., Ste 105
                                              Lufkin, TX  75901-0340

                                              James P. Brogan
                                              Wayne O. Stacy
                                              Carolyn V. Juarez
                                              Ann Marie Byers
                                              Sarah J. Guske
                                              COOLEY LLP
                                              380 Interlocken Crescent, Ste. 900
                                              Broomfield, CO  80021-8023
                                              Telephone:     (720) 566-4000
                                              Facsimile:     (720) 566-4099

                                              Thomas J. Friel, Jr.
                                              COOLEY LLP
                                              101 California Street, 5th Floor
                                              San Francisco, CA  94111-5800
                                              Telephone:     (415) 693-2000
                                              Facsimile:     (415) 693-2222

18.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).   As such, this **PLAINTIFF ACQIS LLC'S OPPOSITION TO MOTION FOR LEAVE TO AMEND DEFENDANTS' INVALIDITY CONTENTIONS** was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by facsimile and/or U.S. First Class Mail on September 22, 2010.

*/s/ Wayne O. Stacy*

345323 v3/CO

19.